UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN A. WILSON,<br><br>                        **Plaintiff,**<br><br>v.<br><br>THE NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY ('DCP&P') (formerly Division of Youth & Family Services), KARA P. WOOD, in her official capacity as Director of DCP&P, ALLISON BLAKE, in her official capacity as the Commissioner of the Department of Children and Families, KATHY CORAIN, in her individual capacity, GILLIAN BATTS, in her individual capacity, JANET DASILVA, in her individual capacity, SUSAN DEPRETENTS, in her individual capacity, ODELIZIO ROSARIO, in her individual capacity, MARIA LUGO, in her individual capacity, FRANK J. DYER in his individual capacity, CAROL PERSONETTE-DOYLE, in her individual capacity, GERALDINE LIVENGOOD, in her individual capacity, and John Does 1–15,<br><br>                        **Defendants.** | No. 13–cv–3346 (KM)(MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Karen A. Wilson, brings this action alleging that the defendants committed constitutional, federal statutory, and state statutory violations during the process of removing her child from her care and eventually terminating her parental rights. This matter comes before the court on two motions:

1

(1) a motion (ECF No. 9) to dismiss the complaint, filed by defendants New Jersey Division of Child Protection and Permanency ("DCP&P"), Kara P. Wood, Gillian Batts, Janet Dasilva, Odelizio Rosario, Carol Personette-Doyle, Geraldine Livengood, and Allison Blake; and

(2) a motion (ECF No. 15) to dismiss the complaint, as well as to join DCP&P's motion to dismiss, filed by defendant Frank J. Dyer.[1]

For the reasons set forth below, the defendants' motions to dismiss the complaint are GRANTED in part and DENIED in part.

## I. BACKGROUND[2]

### A. The Parties

On May 28, 2013, Wilson filed a complaint (ECF No. 1) against:

A. DCP&P (formerly Division of Youth & Family Services ("DYFS")), a New Jersey child protection and welfare agency within the Department of Children and Families;

B. Kara P. Wood in her official capacity as Director of DCP&P;

C. Allison Blake in her official capacity as the Commissioner of the Department of Children and Families;

D. Kathy Corain, a nurse in St. Joseph's Hospital in Paterson, New Jersey, in her individual capacity;

E. Gillian Batts, a DCP&P child protective services worker, in her individual capacity;

F. Janet Dasilva, a DCP&P supervisor of child protective services workers, in her individual capacity;

---

[1] Defendants Kathy Corain, Susan Depretents, and Maria Lugo have not answered or moved in response to the complaint.

[2] The facts that follow are taken from the complaint. They are assumed to be true solely for the purposes of the motions to dismiss. *See* Part III, *infra*.

G. Susan Depretents, a Passaic County social worker, in her individual capacity;

H. Odelizio Rosario, a DCP&P child protective services worker, in her individual capacity;

I. Maria Lugo, a DCP&P child protective services worker, in her individual capacity;

J. Frank J. Dyer, a psychological expert for DYFS, in his individual capacity;

K. Carol Personette-Doyle, the court appointed law guardian for Wilson's biological daughter, in her individual capacity;

L. Geraldine Livengood, a New Jersey Deputy Attorney General, in her individual capacity; and

M. John Does 1–15.

(Compl. ¶¶ 2–18)

### B. Relevant Facts

The New Jersey courts terminated Wilson's parental rights over her daughter, and the decision was affirmed on appeal. The complaint alleges a factual narrative that at times diverges sharply from the factual findings of the state trial court as recited in the appellate opinion affirming the parental termination decision. *Compare* Compl. *with N.J. Div. of Youth & Family Servs. v. K.W.*, No. A–5416–10T2, 2012 WL 1581252 (N.J. Super. Ct. App. Div. May 8, 2012) (herein, "State Appellate Decision"). The complaint discusses abuses of process in the immediate removal of Wilson's child after birth and Wilson's subsequent interactions with the defendants throughout the termination proceedings, while the State Appellate Decision depicts a failed, resource-intensive, four year effort to teach Wilson the skills necessary to raise her child. (*Id.*) For present purposes, I consider the facts as related in Wilson's complaint.

The complaint alleges the following: Wilson is a learning disabled high school graduate. (Compl. ¶ 17) On October 26, 2007, she gave birth to a

daughter, Kate,[3] at St. Joseph's Hospital in Paterson, New Jersey. (Compl. ¶ 18) At the time, Wilson was living with her parents and Kate's father. (Compl. ¶ 21)

Weeks before Kate's birth, Wilson asked Depretents, a social worker at St. Joseph's, for assistance in finding an alternative home because the father-to-be was abusive. Depretents assured her that assistance would be forthcoming. (Compl. ¶¶ 22–25) Upon Kate's birth, Depretents contacted DYFS,[4] which sent Rosario, a caseworker, to St. Joseph's. (Compl. ¶ 27) Shortly after Kate's birth, Rosario, Depretents, and Corain, another St. Joseph's nurse, met with a heavily medicated Wilson and compelled her to sign a HIPAA form releasing otherwise-confidential information to DYFS. (Compl. ¶¶ 28–33) DYFS then placed Kate with a foster family, acquaintances of Corain. (Compl. ¶ 34)

Wilson did not commit any child abuse or neglect against Kate, and she is not listed in New Jersey's Child Abuse Registry. (Compl. ¶¶ 33, 35, 47) Kate, who had no abnormalities at birth, manifested serious harms while under DYFS's care, including an irregular heartbeat, a spinal abnormality, a seizure disorder, and a brain malformation. (Compl. ¶¶ 36–37 citing State Appellate Decision, 2012 WL 1581252 at *2) By the age of two, Kate's development was regressing; for example, she lost words that she had learned, and reverted from walking to crawling. *Id.*

The defendants allegedly gave a misleading picture of Wilson's fitness as a parent. (Compl. ¶¶ 24, 41, 44) Specifically they misrepresented Wilson's IQ to the court, and Dr. Dyer, DYFS's psychological expert, did not administer diagnostic tests in a manner that accommodated Wilson's learning disability. (Compl. ¶¶ 42, 43)

---

[3] "Kate" is a fictitious name used by the State Appellate Decision; I use it in this opinion as well.

[4] DCP&P was known as DYFS throughout the relevant period.

4

Wilson also alleges that the defendants have retaliated against her for complaining about their conduct, and that they have conspired to deny her parental rights. (Compl. ¶¶ 48–50) She alleges, upon information and belief, that all of the defendants' conduct is part of an established scheme to earn money from the federal government through creating new foster care situations, and that DYFS has acted in this manner on prior occasions. (Compl. ¶¶ 54–58)

### C. Claims

Wilson's complaint, filed on May 28th, 2013, alleges eight claims for relief:

1. § 1983 violations of the Fourth and Fourteenth Amendments by DCP&P, Wood, and Blake for failure to properly promulgate rules and train those in their command who committed abuses of process during their investigation. Wilson requests an injunction requiring the formulation of explicit instructions and policies against abuse of process. (Compl. ¶¶ 59–66)

2. §§ 1983 and 1986 violations of the Sixth and Fourteenth Amendments by DCP&P, Wood, and Blake, for a policy or custom of improper hiring and inadequate training that led to abuses of process and deliberate indifference to the rights of persons including Wilson. Wilson requests the same injunction as in count 1. (Compl. ¶¶ 67–72)

3. § 1985 conspiracy by all defendants to violate the Wilson's civil rights through the alleged abuses of process. Wilson requests $10 million in damages, $50 million in punitive damages, counsel fees, costs of suit, interest, damages for pain and suffering, and other appropriate relief. (Compl. ¶¶ 73–76)

4. § 1983 violations by all defendants of Wilson's due process and equal protection rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments for policies, conduct, acts, and omissions that excessively interfered with Wilson's fundamental rights to privacy and freedom to

5

    raise a family. Wilson requests the same relief as in count 3. (Compl. ¶¶ 77–83)

5. § 1983 violations by all defendants of the First, Fourth, Sixth, Eighth, and Fourteenth Amendments for depriving Wilson of her due process rights, her rights to be free from excessive interference with family relationships, and her rights to speak freely about the defendants' conduct without fear of reprisal and retaliation. Wilson requests the same relief as in count 3. (Compl. ¶¶ 84–93)

6. § 1983 violations by all defendants under the First and Fourteenth Amendments for retaliating against Wilson's opposition to defendants' unlawful practices. Wilson requests the same relief as in count 3. (Compl. ¶¶ 94–103)

7. Violations of Wilson's rights under Title II of the Americans with Disabilities Act, (42 U.S.C. §§ 12131–12165), for failing to provide plaintiff with services to protect her rights and using her disabilities as a means to deprive her of those rights. Wilson requests the same relief as in count 3. (Compl. ¶¶ 104–09)

8. Violations of the above rights under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6–1 to –2. Wilson requests the same relief as in count 3. (Compl. ¶¶ 110–13)

### D. These Motions to Dismiss

On February 11, 2014, the defendants who have appeared in the case moved to dismiss the complaint. They argue that: (1) Wilson's claims are barred by the *Rooker-Feldman* doctrine, (2) Wilson's claims are barred as a result of issue preclusion, (3) the defendants are immune from suit under the Eleventh Amendment, (4) Wilson failed to sufficiently plead a conspiracy, and (5) the defendants are immune under principles of quasi-judicial immunity.

## II. SUBJECT MATTER JURISDICTION

The defendants' motions assert that this Court is barred from considering Wilson's suit because of the *Rooker-Feldman* doctrine and because the Eleventh Amendment protects the State and its agencies from suit. (Def. Br. Parts II, IV (ECF No. 9–3); Dyer Br. Section I (ECF No. 15–1)) "Both of those grounds are jurisdictional in nature." *Bolick v. Sacavage*, 617 F. App'x 175, 177 (3d Cir. 2015) (non-precedential).

A challenge to subject matter jurisdiction may be brought under Fed. R. Civ. P. 12(b)(1), on either a factual or facial basis. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed.2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). A facial challenge asserts that the complaint does not sufficiently allege grounds for subject matter jurisdiction. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A court considering such a facial challenge "appl[ies] the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358(3d Cir. 2014). That is, a court must assume the truth of the allegations in the complaint and the documents it attaches or relies upon. Construing such allegations in the light most favorable to the plaintiff, the court may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Aichele*, 757 F.3d at 358–59. "With respect to 12(b)(1) motions in particular, the plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *In re Schering Plough*, 678 F.3d at 244 (internal quotations marks omitted).

### A. *Rooker-Feldman*

The defendants assert that the complaint must be dismissed for lack of jurisdiction pursuant to the *Rooker-Feldman* doctrine. (Def. Br. Point II; Dyer

7

Br. Section I) *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S. Ct. 49, 150 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S. Ct. 1303, 1315 (1983). I will deny those portions of their motions. State court findings will surely have relevance here—collateral estoppel, for example, may come into play at a later stage—but the complaint here does not actually seek to invalidate the state court judgment in the sense of reversing the termination of Wilson's parental rights.

Under the *Rooker-Feldman* doctrine, lower federal courts are barred "from exercising jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Bolick*, 617 F. App'x at 177–78 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125, S. Ct. 1517, 1521–22 (2005)). The doctrine does not apply, however, even "[i]f the matter was previously litigated, as long as the federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party...." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (internal quotation marks omitted).

Wilson does not complain explicitly about injuries caused by the state court judgment or ask this Court to overturn that judgment. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005). She asserts claims for damages based on alleged abuses by state officials, and asks for an injunction to prevent future abuses. (Compl. ¶¶ 59–125) Her claims, if granted, might tend to undermine the state court's conclusions, but would not require that they be overruled. *Great W. Mining*, 615 F.3d at 166, 173 (holding that if plaintiffs could prove that constitutional violations precipitated an adverse state court decision, and that an award of damages would not require overruling that decision then *Rooker-Feldman* does not bar their claim); *see also B.S. v. Somerset Cnty.*, 704 F.3d 250, 260 (3d Cir. 2013) (holding that

injuries traceable to defendants' actions, rather than the state court orders caused by those actions, are not barred by *Rooker-Feldman*). I therefore deny the motions to dismiss on *Rooker-Feldman* grounds.[5]

**B. Eleventh Amendment**

The defendants argue that they are immune from suit under the Eleventh Amendment. (Def. Br. Point IV) The Eleventh Amendment to the Constitution guarantees the states' immunity from certain claims for damages: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Despite the seemingly limited scope of its wording, the Eleventh Amendment has long been held to incorporate a more general principle of sovereign immunity that bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–101, 104 S. Ct. 900, 908 (1984). This immunity had been extended to "state agencies and departments and officials when the state is the real party in interest." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Eleventh Amendment immunity is subject to three exceptions: "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Id.* There is no claim of waiver here, but the first and third exceptions may be relevant, as discussed below.

### 1. Damages under §§ 1983, 1985, 1986 (Claims 3–6)

Claims 3–6 seek damages under 42 U.S.C. §§ 1983, 1985, and 1986. Section 1983 provides:

---

[5] We are, of course, at the pleading stage. Should it emerge after discovery that the plaintiff has merely "pleaded around" *Rooker-Feldman*, the issue may be revisited. Certain allegations potentially implicate the validity or effect of the state court decision itself (*See, e.g.*, Compl. ¶¶ 46, 52, 80, 91).

9

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983 (emphasis added).

**DCP&P.** Eleventh Amendment immunity is closely intertwined with the issue of a suable "person" under section 1983. Thus a state and its departments are not considered "persons" amenable to suit under § 1983 because they are protected by sovereign immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67–70, 109 S. Ct. 2304, 2310–2312 (1989). Suits for damages against "governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes" and suits against state officials, which are "no different from a suit against the State itself," are also barred by sovereign immunity. *Id.* at 70–71, 109 S. Ct. at 2312.[6] DCP&P is therefore immune under the Eleventh Amendment to the extent it is an "arm of the state."

To determine whether an entity is an arm of the state, the Court considers three factors: (1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy. *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 856 (3d Cir. 2014) (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989) (en banc)). The Third Circuit has held that DYFS (now DCP&P) is an arm of the state covered by New Jersey's sovereign immunity. *See Howard v. N.J. Div. of Youth and*

---

[6] Logically, the same analysis applies to §§ 1985 and 1986, which were passed along with § 1983 as part of the Civil Rights Act of 1871. *See Quern v. Jordan*, 440 U.S. 332, 342, 99 S. Ct. 1139, 1146 (1979) (the Civil Rights Act of 1871 did not abrogate the states' sovereign immunity); *Muhammad v. Dempsey*, No. 11-CV-350, 2011 WL 4905513, at *3 (M.D. Pa. Oct. 14, 2011) *aff'd*, 531 F. App'x 216 (3d Cir. 2013).

*Family Servs.*, 398 F. App'x 807, 811–812 (3d Cir. 2010); *see also Mammaro v. The N.J. Div. of Child Permanency & Prot.*, No. 13–CV–6483 FLW, 2015 WL 225999, at *4–5 (D.N.J. Jan. 16, 2015); *Love v. N.J. Div. of Youth & Family Servs.*, No. 07–CV–3661 JEI, 2010 WL 2950019, at *2 (D.N.J. July 22, 2010) (collecting cases).

I follow suit, and grant the motion to dismiss Counts 3–6 on Eleventh Amendment grounds as against DCP&P.

**Wood and Blake**. Defendants Wood and Blake are sued solely in their capacities as state officials. State officials are, like state agencies, indistinguishable from the state itself. They may not be sued for damages consistent with the Eleventh Amendment; in their official capacities, they are not "persons" subject to suit under § 1983. *Will*, 491 U.S. at 71 n.10, 109 S. Ct. at 2312 n.10; *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 3106 n.14 (1985). I therefore also grant the motion to dismiss Counts 3–6 as against defendants Wood and Blake.

**Remaining individual defendants**. The remaining individual defendants, although employed by the state, are sued for damages in their individual capacities. A state official in his or her individual capacity does not partake of the state's Eleventh Amendment sovereign immunity, and is a "person" amenable to suit under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 30–31, 112 S. Ct. 358, 364 (1991) ("the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983") (internal quotations omitted); *Graham*, 473 U.S. at 167–68, 105 S. Ct. at 3106; *Smith v. New Jersey*, 908 F. Supp. 2d 560, 563 (D.N.J. 2012). An award of damages from an individual defendant, as opposed to the public treasury, is a "permissible remedy in some circumstances." *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S. Ct. 1683 (1974).

The motions to dismiss on Eleventh Amendment grounds the remaining individual defendants, who are sued in their individual capacities, are therefore DENIED.

### 2. Injunctive relief under sections 1983/1986 (Claims 1 and 2)

Claims 1 and 2 seek only prospective injunctive relief, not damages, under 42 U.S.C. §§ 1983 and 1986. These claims name DCP&P, a state agency, as well as Wood and Blake in their official capacities as heads of state agencies. (Compl. ¶¶ 2–4)

The agency itself, as an office of state government, is not amenable to suit, even on an injunctive theory. The Eleventh Amendment permits an equivalent claim to be brought, however, by way of an "official capacity" suit against a state official. *See, e.g., Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441 (1908) (Eleventh Amendment permits "suits against state officials that seek prospective relief to end an ongoing violation of federal law"); *Will,* 491 U.S. at 70–71 n.10, 109 S. Ct. at 2312 n.10; *Graham,* 473 U.S. at 167 n.11, 105 S. Ct. at 3106 n.11; *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 318 (3d Cir. 2013). It is thus customary to do what plaintiff has done here: sue the head of an agency (here, Wood or Blake) demanding cessation of the agency's alleged violation of federal law.

As to claims 1 and 2, then, the motion to dismiss on Eleventh Amendment grounds is GRANTED as to DCP&P and DENIED as to Wood and Blake. The consequences, however, are limited; the claim for injunctive relief remains, in substance if not in form, a claim against the agency.

### 2. NJCRA (Claim 8)

Wilson sues all defendants for damages under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6–1 to –2 (Claim 8). "The NJCRA is substantially similar to the federal civil rights statutes...." *Lopez-Siguenza v. Roddy,* No. 13–CV–2005 JBS, 2014 WL 1298300, at *7 (D.N.J. Mar. 31, 2014). Like § 1983, the NJCRA uses the word "person." N.J. Stat. Ann. § 10:6–2. Courts have applied *Will*'s § 1983 sovereign immunity reasoning in parallel fashion to bar NJCRA claims for damages against the state, its entities, and officers. *See Estate of Lagano,* 769 F.3d at 856. Indeed, state officials are immune even from claims for prospective injunctive relief under the NJCRA.

*Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015) (citing *Pennhurst*, 465 U.S. at 106, 104 S. Ct. at 911) *cert. denied*, 136 S. Ct. 189 (2015).

Accordingly, the motion to dismiss Claim 8 as against the official defendants, DCP&P, Blake, and Wood, is GRANTED. As to the remaining individual-capacity defendants, the motions to dismiss are DENIED.

### 3. ADA (Claim 7)

Wilson also sues all defendants under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* (claim 7). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Wilson's claims imply that Congress, in enacting the ADA pursuant to its Section 5 powers under the Fourteenth Amendment, abrogated the states' Eleventh Amendment immunity as to her claims.

Eleventh Amendment immunity from ADA claims presents a question that I cannot resolve on the pleadings or the present record. The relevant factors are canvassed and discussed in *Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524 (3d Cir. 2007). *See also United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 882 (2006); *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978 (2004).

For certain well-established ADA claims (for example, denial of handicap access facilities in courthouses) the relevant analysis has been performed in the case law. Plaintiffs' ADA claims are not of that nature. The defendants' motions, too, fail to offer the requisite analysis. In any event, it appears that such an analysis will require development of a factual record and refinement of the claims themselves after discovery. *See Floyd v. N.J. Casino Comm'n*, No. 05–CV–3949 RMB, 2007 WL 1797656, at *4 (D.N.J. June 19, 2007) (The defendant "has not come close to performing the requisite analysis and, thus, the Court is

in no position to make the immunity determination as to Plaintiff's ADA claims at this juncture.")

The motions to dismiss the ADA claim (Claim 8) on Eleventh Amendment grounds are therefore DENIED.

### III. MERITS

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

#### A. Issue Preclusion

The defendants assert that Wilson's claims are barred by principles of issue preclusion, based on the state court's findings in the parental rights proceeding. (Def. Br. Point III) New Jersey preclusion law applies. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999.

> In New Jersey, a party seeking to invoke preclusion must show that:
> (1) the issue to be precluded is identical to the issue decided in the prior proceeding;
> (2) the issue was actually litigated in the prior proceeding;
> (3) the court in the prior proceeding issued a final judgment on the merits;
> (4) the determination of the issue was essential to the prior judgment; and

14

> (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Winters v. N. Hudson Reg'l Fire & Rescue*, 212 N.J. 67, 50 A.3d 649, 659 (2012) (line breaks added for clarity); *accord Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 204 (3d Cir. 2004).

I cannot resolve these factors at the motion to dismiss stage. The state trial court's decision (which is not before me in any event) focused on the interests of the child and the termination of parental rights. This complaint focuses on the alleged unfairness of the procedures to which Wilson was subjected by the state agencies. The issue is not so clear that I can decide it on a Rule 12(b)(6) standard. (*See* Def. Br. 14–15) The motions to dismiss on issue preclusion grounds are therefore DENIED.

### B. § 1985 (Claim 3)

Wilson's complaint alleges, *inter alia*, conspiracy to deprive her of her civil rights pursuant to 42 U.S.C. § 1985 (Claim 3). The defendants challenge the sufficiency of the § 1985 claim. (Def. Br. Point VI)

Title 42, United States Code, Section 1985(3), permits a plaintiff to bring a claim that two or more people have acted together to deprive her of her civil rights. A plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir.2006) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29, 103 S. Ct. 3352, 3356 (1983)).

Wilson's 1985 claim is potentially vulnerable. It fails to clearly allege any sort of racial or class-based animus, or any specifics about the formation of any conspiratorial agreement. Covert conspiracies, however, may be inferred from surrounding factual circumstances, and the complaint does elsewhere

15

allege violations of equal protection. Dismissal, or not, of Claim 3 would not alter the course of discovery, and factual issues are best addressed on summary judgment or at trial. For the present, I will permit Count 3 to stand.

### C. Absolute Immunity

The defendants' final argument is that Wilson's claims are barred because they enjoy quasi-judicial immunity. (Def. Br. Point VII; Dyer Br. Section II) This aspect of the motions are granted as to defendants Personette-Doyle and Livengood, but cannot be granted as to other defendants at the motion to dismiss stage.

The Supreme Court has consistently recognized that certain common law immunities survived Congress's passing of § 1983. *See Burns v. Reed*, 500 U.S. 478, 484, 111 S. Ct. 1934, 1938 (1991); *see also Yarris v. Cnty. of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006). Absolute immunity is restricted to public officials who perform special functions, such as judges, jurors, and prosecutors, when performing specific activities. *See Butz v. Economou*, 438 U.S. 478, 508–11, 98 S. Ct. 2894, 2911–13 (1978). Absolute immunity "attaches to actions intimately associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008) (internal quotation marks omitted). Thus, the court must perform a "meticulous analysis of [the] actions and functions" of those seeking immunity. *See Light v. Haws*, 472 F.3d 74, 79 (3d Cir. 2007); *accord Odd*, 538 F.3d at 208. In the child welfare context, a court must "ascertain whether [the defendants] functioned as the state's advocate when performing the actions that gave rise to the due process violations [that the plaintiff] seeks to redress, or whether those claims instead arose from unprotected administrative or investigatory actions." *B.S.*, 704 F.3d at 265 (internal quotation marks omitted). Often, such an analysis will involve facts beyond the scope of the pleadings.

One form of immunity for child welfare workers is clearly defined, however, and is suitable for resolution on a motion to dismiss. Under *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 495 (3d Cir. 1997), child welfare workers are "entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." Such immune activities "include the formulation and presentation of recommendations to the court in the course of such proceedings." *Id.* The face of the complaint establishes that *Ernst* immunity applies to two defendants: Personette-Doyle and Livengood.

The only fact pled as to Personette-Doyle is that she was "the Court appointed Law Guardian" representing Wilson's daughter. (Compl. ¶ 12; Def. Br. 6) "In abuse and neglect proceedings, a law guardian is appointed by the court to act on behalf of the child pursuant to New Jersey Statue § 9:6–8.43, and accordingly, a law guardian is 'cloaked with the long-standing immunity afforded judges by state and federal law.'" *Melleady v. Blake*, No. 11–CV–1807 NLH, 2011 WL 6303245, at *15 (D.N.J. Dec. 15, 2011). Lacking any other immunity-destroying fact or allegation, I will dismiss the complaint as against Personette-Doyle.

The only fact pled as to Livengood is that she is "a Deputy Attorney General in the State of New Jersey." The implication seems to be that she represented the State in Wilson's parental termination proceedings. (Compl. ¶ 13; Def. Br. 6) "[A]ttorneys who prosecute dependency proceedings on behalf of the state are entitled to absolute immunity from suit for all of their actions in preparing for and prosecuting such dependency proceedings." *Ernst*, 108 F.3d at 488–89. Again, lacking any allegation that Livengood performed any act outside the scope of judicial proceedings, I must dismiss the complaint as against her.

All other defendants are alleged to have acted in more administrative capacities. I cannot determine at the pleading stage how closely their acts were tied to the judicial function.

Accordingly, the motions to dismiss on grounds of absolute immunity are GRANTED as to Personette-Doyle and Livengood, but DENIED as to all other defendants.

### IV. CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part. All counts of the complaint are DISMISSED as to Livengood and Personette-Doyle. Claims 1–6 and 8 are DISMISSED as to DCP&P. Claims 3–6 and 8 are DISMISSED as to Blake and Wood. The motions to dismiss are otherwise denied. A chart is attached as a guide.

Dated: January 25, 2016

_____
**Hon. Kevin McNulty**
**United States District Judge**

| Claim | Relief sought | Against | Dismissed against | Defendants remaining |
|---|---|---|---|---|
| **1 & 2** §§ 1983, 1986 | Injunction | Official defendants | DCP&P | Wood, Blake |
| **3** § 1985 conspiracy | Damages | All defendants | Official defendants; Livengood; Personette-Doyle | Individual defendants *except* Livengood and Personette-Doyle |
| **4, 5 & 6** § 1983 | Damages | All defendants | " " | " " |
| **7** ADA Title II | Damages | All defendants | Livengood; Personette-Doyle | Official defendants; Individual defendants *except* Livengood and Personette-Doyle |
| **8** NJCRA | Damages | All defendants | Official defendants; Livengood; Personette-Doyle | Individual defendants *except* Livengood and Personette-Doyle |

"Official Defendants" = DCP&P, Wood, and Blake

"Individual Defendants" = all other defendants except Kathy Corain, Susan Depretents, and Maria Lugo, who have not answered or moved in response to the complaint.

"All defendants" = Official Defendants plus Individual Defendants

19